**John J. PITCHFORD**

v.

**The UNITED STATES; Shirley M. Pitchford, Third-Party Defendant.**

No. 39–79.

United States Court of Claims.

Dec. 2, 1981.

Richard G. Noble, Indianola, Miss., attorney of record, for plaintiff; Crosthwait, Terney, Noble & Eastland, Indianola, Miss., of counsel.

Cynthia C. Cummings, with whom was Asst. Atty. Gen., J. Paul McGrath, Dept. of Justice, Washington, D. C., for defendant; Max Gest, Los Angeles, Cal., of counsel.

Shirley M. Pitchford, pro se; Max Gest, Los Angeles, Cal., of counsel.

Before FRIEDMAN, Chief Judge, and KUNZIG and BENNETT, Judges.

FRIEDMAN, Chief Judge:

In this case, before us on cross-motions for summary judgment, the plaintiff, a former prisoner-of-war in North Vietnam, seeks to recover the portions of his pay and allowances that the Air Force paid during his captivity to his then-wife. We hold for the defendant and dismiss the petition.

I.

The plaintiff and his ex-wife first were married in 1963. They were divorced in May 1965. In June of that year, the plaintiff designated his mother as the recipient of survivor benefits if he were missing. Plaintiff also gave a power of attorney to his brother. In November 1965, just three days before plaintiff went overseas to Vietnam, he remarried his ex-wife. On December 20, 1965, the plaintiff, a pilot, was shot down over North Vietnam and taken prisoner. He was in captivity for almost eight years. While a prisoner, he was entitled to full pay and allowances. 37 U.S.C. § 552(a)(1) (1976).

During the plaintiff's captivity, the Air Force, pursuant to the Missing Persons Act, 37 U.S.C. §§ 551–558 (1976), disbursed to his wife approximately $100,000 from his funds, which included a savings account to which the Air Force had transferred part of his pay. The Air Force also paid some of the funds to the plaintiff's mother, a disbursement not in dispute. The plaintiff

was released from captivity on February 12, 1973. When he returned to this country, he lived with his wife and her children. In May 1973, he called the Air Force to thank the caseworkers for their care of his family during his absence.

In 1976, the plaintiff and his wife again were divorced. In 1977, the plaintiff sought recovery from the Air Force of all the money it had paid to his wife during his captivity. When the Air Force refused recovery, the plaintiff in 1979 filed this suit. The plaintiff contends that the disbursements made to his ex-wife constituted an abuse of the Air Force's discretion because they were excessive.

The United States impleaded the defendant's former wife as a third-party defendant and asserted a contingent claim against her for any amount the plaintiff might recover against the United States. The plaintiff, the United States, and the third-party defendant all moved for summary judgment. Although the latter two contend that the plaintiff's claim is barred by laches, our disposition of the merits of this case makes it unnecessary to consider that contention.

## II.

The Missing Persons Act provides that a member of the uniformed services who is in a missing status continues to receive or have credited to his account the pay and allowances to which he is entitled while in that status. 37 U.S.C. § 552(a)(1). The Act further provides:

[T]he Secretary concerned, or his designee, may, when he considers it in the interest of the member, his dependents, or the United States, direct the initiation, continuance, discontinuance, increase, decrease, suspension, or resumption of payments of allotments from the pay and allowances of a member entitled to pay and allowances under section 552 of this title.

37 U.S.C. § 553(e). The Secretary has similar authority to change allotments to and authorize withdrawals from a member's savings account. 10 U.S.C. § 1035(e) (1976).

In *Cherry v. United States*, 225 Ct.Cl. ——, 640 F.2d 1184 (1980), we pointed out that "this Act is intended to and does grant a great deal of discretion to the Secretary or his designee." *Id.* at ——, 640 F.2d at 1187. We also stated:

Congress desired and needed a flexible system to allow provision for dependents whose supporting members were separated from their families not only geographically, but from any communication that would enable participation in the disbursement of their pay. Administrative discretion is needed to adjust to changing circumstances which are bound to occur over such a forced separation of many years.

*Id.* at ——, 640 F.2d at 1187.

The *Cherry* case, upon which both parties rely, presented issues similar to those now before us, but in quite different circumstances. Colonel Cherry, like the plaintiff in the present case, had been a prisoner in North Vietnam, and during his captivity the Secretary of the Air Force had disbursed substantial portions of Colonel Cherry's pay and allowances to his wife. Cherry's wife was unfaithful to him and had a child by another man. Upon his release from captivity and return to this country, Colonel Cherry divorced his wife on the ground of adultery.

During Colonel Cherry's captivity, the Air Force received information that should have indicated to it that Mrs. Cherry "may [have been] spending her allotments in ways that [were] inconsistent with the objectives of the Missing Persons Act." *Id.* at ——, 640 F.2d at 1189. She requested and received emergency funds for surgery in a private hospital even though as a serviceman's wife she was entitled to free medical care at excellent military hospitals in her area. In fact, the surgery was for the delivery of her illegitimate child. Thereafter Mrs. Cherry avoided answering inquiries by the Air Force concerning her need for and use of the money being disbursed to her. Colonel Cherry's sister wrote the Air Force complaining about Mrs. Cherry's marital misconduct.

We held the Secretary had abused his discretion in routinely

granting each and every request for funds made by Mrs. Cherry....

... [W]e hold that at some point in time the Air Force should have undertaken an investigation of the manner in which funds were expended and that Colonel Cherry is entitled to funds disbursed after that point, if further examination of the facts indicates that disbursements to Mrs. Cherry were made on the basis of false claims by her or were for nonemergency purposes or not warranted by the particular circumstances. Possibly the Air Force would have learned thus of earlier misstatements and been able to offset claims by it for refunds against current allotments.

*Id.* at ——, 640 F.2d at 1190.

Thus, we held only that Colonel Cherry had an enforceable claim to recover any amounts the Air Force disbursed after it became or should have been aware of Mrs. Cherry's improprieties. We remanded the case to the Trial Division to make those determinations.

Although the plaintiff here argues that under *Cherry* he is entitled to recover, the present case is a far cry from that one. The plaintiff makes no contention that during his captivity his former wife was unfaithful to him or otherwise misbehaved. At oral argument the plaintiff's counsel stated that the plaintiff's only complaint against Mrs. Pitchford during his captivity was that she had been "extravagant." The plaintiff lived with his wife after he returned to this country, and shortly after his return he thanked the Air Force for the care it took of his family. It was not until more than three years later, after the plaintiff and his wife again were divorced, that the plaintiff sought to recover the money the Air Force had disbursed to his former wife during his captivity.

We decline to extend the narrow holding in *Cherry* to the significantly different facts of the present case. In *Cherry*, the Secretary should have been aware that Colonel Cherry would not have wanted the Air Force to continue making payments to his unfaithful wife, and the Secretary's default was in failing to investigate once the Air Force received information indicating that Mrs. Cherry had acted contrary to her marital obligations. In the present case, in contrast, there is no indication that Mrs. Pitchford committed similar improprieties. The Secretary had no basis for believing that the plaintiff would have wished to terminate the payments to her because of their amount. The plaintiff's contemporary satisfaction with the Air Force's financial treatment of his wife during his captivity is shown by his thanking the Air Force personnel after his release, for taking care of his family.

As noted, we recognized in *Cherry* that the Missing Persons Act gives the Secretary "a great deal of discretion" in disbursing the pay and allowances of missing servicemen to their families. We cannot say that the Secretary abused that discretion in making the disbursements he did to Mrs. Pitchford. The statutory standard governing such disbursements is whether they are "in the interest of the member, his dependents, or the United States." 37 U.S.C. § 553(e). It requires an extraordinary case, such as that in *Cherry*, for us to conclude that the Secretary abused his discretion. The fact that, several years after the plaintiff was released from captivity, he asserted that the Secretary should have been stricter in making the disbursements is not enough to show that the Secretary abused his discretion in following the liberal payment policy he did.

Although the court in *Cherry* used language critical of the Secretary for routinely paying all requests from Mrs. Cherry, the actual holding of the case, as noted, was much narrower. Moreover, the record in this case shows that the Air Force carefully considered Mrs. Pitchford's requests for funds before making disbursements. Although the plaintiff may disagree with the Secretary's judgment in making those payments, the payments cannot fairly be characterized as routine. The scope of investigation required before the Secretary deter-

mines to make a payment to a missing serviceman's wife necessarily is a matter for the Secretary's discretion.

It is not our function to second-guess the Secretary's judgment on whether a particular payment is appropriate or to substitute our judgment for his on this issue. Under the statute it is the Secretary who has the discretion to determine whether a particular payment is in the interest of "the member, his dependents, or the United States." His determination is subject to only the most limited review in this court under the strict abuse-of-discretion standard.

On the facts of this case, we cannot say that the Secretary exceeded his authority in making the payments he did to Mrs. Pitchford during the plaintiff's captivity.

Since we dismiss the plaintiff's claim against the defendant, we also dismiss the government's contingent claim against the third-party defendant.

## CONCLUSION

The plaintiff's motion for summary judgment is denied, the defendant's and the third-party defendant's motions for summary judgment are granted, and the petition is dismissed.