ARCHER, Circuit Judge.
 

 DECISION
 

 Jose David Luna appeals from a grant by the United States Claims Court, Docket No. 61-81C, of summary judgment against him and in favor of the United States. We affirm.
 

 Background
 

 This case concerns the Air Force’s disposition of the military pay and allowances of Lieutenant Colonel Jose David Luna (LTC Luna). The following facts are undisputed.
 

 LTC Luna, a member of the U.S. Air Force, was shot down on March 10, 1967, while flying a combat mission over North Vietnam. Prior to that date, he had executed Air Force (AF) Form 246, designating his wife, Pearl Saunders Luna, to receive 100 percent of his pay and allowances in the event he became listed as missing in action or captured. Pursuant to AF Form 246 and the Missing Persons Act, 37 U.S.C. §§ 551-558 (1982), the Air Force disbursed LTC Luna’s military pay and allowances to Mrs. Luna during the period of his captivity commencing on March 10, 1967, and ending with his return to the United States on March 8, 1973.
 

 Mrs. Luna received a number of letters from LTC Luna while he was a prisoner of war indicating his desire that she put as much of his pay as possible into savings. Mrs. Luna, on November 18,1968, instructed the Air Force to discontinue monthly withholding for income tax purposes and to deposit the amount in a Uniformed Services Savings Deposit Program (USSDP) savings account. In addition, on March 10, 1970, she instructed the Air Force to reduce her allotment by $440.00 per month and to deposit that amount in the USSDP account. Occasionally, Mrs. Luna deposited additional amounts. During the entire period of LTC Luna’s absence, Mrs. Luna made only four requests totalling $6,700.00 to withdraw money from the USSDP account. The reasons she gave for the withdrawals included purchase of a new car, payment of bills, car repairs, and travel to California.
 

 The Air Force did not investigate Mrs. Luna’s personal or financial circumstances when the disbursements and withdrawals were made.
 

 LTC Luna was released and returned to the United States on March 8, 1973. The Air Force paid him $25,255.63 in settlement of his USSDP account on July 30, 1973. Shortly thereafter, LTC Luna and Mrs. Luna were divorced.
 

 On February 6, 1981, LTC Luna filed a complaint in the United States Court of Claims seeking recovery of the funds which the Air Force permitted Mrs. Luna to withdraw from the USSDP account and of that portion of his military pay which the Air Force disbursed to her in excess of the dollar amount of the allotment at the time he was reported missing. LTC Luna contended that the Air Force’s payment of these monies to Mrs. Luna without investigation of her financial circumstances violated both the Missing Persons Act, 37 U.S.C. §§ 551-558 (1982) and Air Force regulations and that it constituted an abuse of discretion.
 

 Following a hearing on March 13, 1986, the Claims Court granted summary judgment in favor of the United States.
 

 OPINION
 

 The Missing Persons Act authorizes continuation of pay and allowances to members of the uniformed services while in
 
 *1107
 
 prisoner of war or missing in action status and authorizes the Secretary of the Air Force or his designee to initiate, continue, discontinue, or alter pay allotments when he considers it in the interest of the member, his dependents, or the United States. 37 U.S.C. §§ 552(a)(1) and 553(e). Air Force Manual (AFM) 177-133 1120512(f), which regulates the Air Force Accounting and Finance Center (AFAFG) and applies to missing persons, provides:
 

 If the person designated by the member on AF Form 246 to receive his pay is a dependent, AFAFC will, unless the member has specifically indicated otherwise, pay an allotment in the approximate amount of unencumbered entitlement.
 

 LTC Luna designated Pearl Luna on his AF Form 246 to receive 100 percent of his pay if he were missing or captured. We agree with the Claims Court that it is “unnatural to read the term ‘100 percent allotment’ as denoting a specific amount rather than the entirety of [appellant’s] pay.” It therefore was not a violation of the Missing Persons Act or Air Force regulations for the Air Force to make payments to Mrs. Luna of all of LTC Luna’s unencumbered pay including any increase to which he became entitled.
 

 The Secretary has similar authority to change allotments to and authorize withdrawals from a member’s USSDP savings account. 10 U.S.C. § 1035(e) (1982);
 
 Pitchford v. United States,
 
 666 F.2d 533, 534, 229 Ct.Cl. 114 (1981); Department of Defense Pay Manual ¶ 70807.
 
 *
 
 Thus, the question here, as in
 
 Cherry v. United States,
 
 697 F.2d 1043 (Fed.Cir.1983)
 
 (Cherry II),
 
 is whether the Air Force correctly exercised its discretion in allowing Mrs. Luna to receive 100 percent of LTC Luna’s pay throughout his period of captivity and to make withdrawals from the USSDP account without investigation.
 

 The discretion given to the Secretary or his designee by the Missing Persons Act is extensive.
 
 Cherry v. United States,
 
 640 F.2d 1184, 1196, 225 Ct.Cl. 312 (1980)
 
 (Cherry I).
 
 This court stated in
 
 Cherry II
 
 that
 

 It is neither appropriate nor desirable for the Air Force to become involved as a policeman in marital matters____ The Air Force should have a decent respect for the spouse’s privacy and should presume good behavior. The Air Force should not investigate or interfere except with a firm basis.
 

 Cherry II,
 
 697 F.2d at 1049.
 

 The
 
 Cherry
 
 cases presented similar issues to those now before us, but entirely different circumstances. Colonel Cherry, like LTC Luna, had been a prisoner of war and during his captivity the Air Force had disbursed his pay and allowances to his wife. Colonel Cherry’s wife was unfaithful to him and had a child by another man. During Colonel Cherry’s captivity, the Air Force received information that should have triggered an investigation. Colonel Cherry’s sister wrote the Air Force complaining about Mrs. Cherry’s marital misconduct. In addition, between October 1968 and January 1973, Mrs. Cherry made 23 requests for withdrawal of emergency funds from Colonel Cherry’s USSDP account, seriously depleting the account. The most significant of these requests was for surgery in a private hospital even though as a serviceman’s wife she was entitled to free medical care at excellent military hospitals in her area. In fact, the private medical care was for the delivery of her illegitimate child.
 
 Cherry I,
 
 640 F.2d at 1189.
 

 In the present ease, in contrast, the Air Force did not receive complaints from
 
 *1108
 
 LTC Luna’s family or friends that Mrs. Luna was engaged in any form of marital misconduct or was mismanaging the pay and allowances she was receiving. Furthermore, during LTC Luna’s six year absence, Mrs. Luna made only four requests for withdrawal of emergency funds from the USSDP account, while accumulating savings of over $25,000.00. Thus, Mrs. Luna’s conduct, personally and financially, gave the Air Force no reason either to investigate her personal or financial conduct or to interfere with her management of LTC Luna’s pay.
 

 Although Mrs. Luna later stated that the reasons she gave when requesting withdrawal of some, but not all, of the emergency funds were false, there was no reason for the Air Force to question the stated reasons at that time. The Court of Claims, one of our predecessor courts, stated in
 
 Cherry I
 
 that
 

 We certainly would not demand a full scale investigation of the activities of every serviceman’s spouse while he was missing in action, nor a proliferation of forms and proofs whenever an emergency request for funds is made by a serviceman’s dependent____
 

 Cherry
 
 I, 640 F.2d at 1189. Later, in
 
 Pitchford v. United States,
 
 666 F.2d 533, 535, 229 Ct.Cl. 114 (1981), the decision in
 
 Cherry I
 
 was interpreted narrowly as holding “only that Colonel Cherry had an enforceable claim to recover any amount the Air Force disbursed
 
 after it became or should have been aware
 
 of Mrs. Cherry’s improprieties.” (Emphasis added.) The court stated that “[i]t requires an extraordinary case, such as that in
 
 Cherry,
 
 for us to conclude that the Secretary abused his discretion.” The present case is clearly not such a case and we cannot say on the facts here that the Secretary abused his discretion in making the disbursements to Mrs. Luna.
 

 Accordingly, we affirm the Claims Court’s grant of summary judgment in favor of the United States.
 

 AFFIRMED.
 

 *
 

 70807. Withdrawal of Deposits
 

 a. Emergency Withdrawals. Withdrawals may be made in an emergency only when:
 

 (1) The health or welfare of a member of his dependents would be jeopardized [sic] if the withdrawal were not granted.
 

 (2) A member returns from a status of missing, missing-in-action, interned in a foreign country, captured, beleaguered, besieged by a hostile force, or detained in a foreign country against his will.
 

 (3)
 
 Directed by the Secretary concerned or his designee on behalf of dependents of a member in a missing status.
 
 (Emphasis added.)